AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>David Perez,<br>a/k/a "Athensdav2,"<br>a/k/a "chevdav2006@yahoo.com,"<br>a/k/a "Chef DaV,"<br>*Defendant(s)* | )<br>)<br>)  Case No.  12-8231-DLB<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 1, 2012 and June 11, 2012__ in the county of _____Palm Beach_____ in the _____Southern_____ District of __Florida and elsewhere__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252(a)(2) | Distribution of visual depiction of sexual exploitation of minor |
| 18 U.S.C. § 2252(a)(4) | Possession of visual depiction of sexual exploitation of minor |
| 18 U.S.C. § 2252A(a)(2) | Receipt and distribution of child pornography |

This criminal complaint is based on these facts:

See attached Affidavit of Special Agent Scott Wilson, Federal Bureau of Investigation.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Scott Wilson
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __6-12-12__

_____
*Judge's signature*

City and state: __West Palm Beach, Florida__      United States Magistrate Judge Dave Lee Brannon
*Printed name and title*

## AFFIDAVIT

Your affiant, Scott Wilson, being duly sworn, does hereby depose and state:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been so employed for approximately ten years. I am currently assigned to PB-2, the Violent Crimes and Major Offender Squad of the Palm Beach County Resident Agency, Miami Division. Among my responsibilities as a Special Agent are investigating crimes against children, particularly offenses involving child pornography and the exploitation of children to include child prostitution.

2. The facts set forth in this affidavit are based in part on my personal knowledge, information obtained throughout this investigation by others, including other law enforcement officers, my review of documents and Internet records related to this investigation, and information gained from my training and experience. I am familiar with the facts and circumstances of this investigation. I have received training in the area of child pornography and child exploitation through the FBI. I have observed and reviewed examples of child pornography. I also have assisted in child pornography and child exploitation investigations, which have involved reviewing examples in all forms of media including computer media, and have discussed and reviewed these materials with other law enforcement officers.

3. As will be shown below, there is probable cause to believe that DAVID PEREZ, a/k/a "Athensdav2," a/k/a chevdav2006@yahoo.com, a/k/a "ChefDaV," has possessed, distributed, and aided and abetted the receipt of child pornography, in violation of Title 18, United States Code, Sections 2252 and 2252A.

4. The statements in this Affidavit are based in part on information provided by Special Agent (SA) Daniel O'Donnell of the FBI's Innocent Images Operations Unit in

1

Linthicum, Maryland and on my investigation of this matter. Since this affidavit is being submitted for the limited purpose of securing a Criminal Complaint, I have not included each and every fact known to me concerning this investigation.

## STATUTORY AUTHORITY

5.      This investigation concerns alleged violations of Title 18, United States Code, Sections 2252 and 2252A, relating to material involving the sexual exploitation of minors. Title 18, United States Code, Section 2252(a) prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, possessing, or accessing with intent to view any visual depiction of minors engaging in sexually explicit conduct when such visual depiction was either mailed or shipped or transported using any means or facility of interstate or foreign commerce or in interstate or foreign commerce by any means, including by computer, or when such visual depiction was produced using materials that had traveled in interstate or foreign commerce. Title 18, United States Code, Section 2252A(a) prohibits a person from knowingly transporting, shipping, receiving, distributing, reproducing for distribution, or possessing any child pornography, as defined in Title 18, United States Code, Section 2256(8), when such child pornography was either mailed or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or when such child pornography was produced using materials that had traveled in interstate or foreign commerce. Particular subsections of these statutes prohibit the following:

   a.     Under Title 18, United States Code, Section 2252(a)(2), it is a federal crime for any person to knowingly distribute, "any visual depiction using any means or facility of interstate or foreign commerce or that . . . has been shipped or transported in or

2

affecting interstate or foreign commerce . . . by any means including by computer . . . if –
(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct[.]"

    b.    Under Title 18, United States Code, Section 2252(a)(4), it is also a crime for a person to possess or to access with intent to view one or more books, magazines, periodicals, films, or other materials which contain visual depictions of minors engaged in sexually explicit conduct that have been transported using any means or facility of interstate or foreign commerce or in interstate or foreign commerce or that were produced using materials that had traveled in interstate or foreign commerce including by computer.

    c.    Title 18, United States Code, Section 2252A(a)(2) prohibits a person from knowingly receiving or distributing any child pornography that has been shipped or transported using any means or facility of interstate or foreign commerce or in interstate or foreign commerce by any means, including by computer.

6.    Title 18, United States Code, Section 2 provides that anyone who aids or abets the commission of an offense against the United States is punishable as a principal.

## DEFINITIONS

7.    The following definitions apply to this Affidavit:

    a.    "Child Pornography," as used herein, is defined by Title 18, United States Code, Section 2256(8)(A), that is, "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where -- (A) the production of the visual depiction involves the use of a minor engaging in

sexually explicit conduct[.]"

b.  "Sexually explicit conduct" as used herein, is defined by Title 18, United States Code, Section 2256(2)(A), that is, "(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person."

c.  "Visual depiction" includes "data stored on computer disk or by electronic means which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format." *See* Title 18, United States Code, Section 2256(5).

## PEER-TO-PEER ("P2P") NETWORKS

8.  Based on my training and experience, I know that persons involed in trading and collecting child pornography use peer-to-peer file sharing (hereinafter, "P2P"). P2P file sharing is a publicly available method of communication available to internet users through the use of special software. Computers linked together through the Internet using this software form a network that allows for the sharing of digital files between users on the network. A user first obtains the P2P software, which can be downloaded from the Internet. In general, P2P software allows the user to set up file(s) on a computer to be shared with others running compatible P2P software. A user obtains files by opening the P2P software on the user's computer, and conducting searches for files that are currently being shared on another user's computer. Based upon my training and experience, your Affiant knows that several different P2P networks are used for sharing child pornography files.

9.  To access the P2P networks, a user first obtains the P2P software, which can be

downloaded from the Internet. This software is used exclusively for the purpose of sharing digital files. When the P2P software is installed on a computer, the user is directed to specify a "shared" folder. All files placed in that user's "shared" folder are available to anyone on the world-wide network for download. Depending upon the rules of the particular P2P network, a user may or may not be required to share files in order to utilize the P2P network.

10. Users of the P2P network find files that they are interested in from amongst the thousands of files offered by other network members by conducting keyword searches of the P2P network ("searching members"). When a user initially logs onto the P2P network, a list of the files contained in that user's "shared" folder is transmitted to the network ("offering members"). The P2P software then matches files in the offering members' file lists to keyword search requests from the searching members. The results of the keyword search are displayed and the searching member then selects file(s) that he/she wants to download. The download of a file is achieved through a direct connection between the searching member's computer and the offering member's computer that is hosting (storing) the original file. Once a file has been downloaded by the searching member, it is stored in the area previously designated by the searching member and will remain there until moved or deleted. Most of the P2P software applications keep logs of each download event. Often times a forensic examiner, using these logs, can determine the IP address from which a particular file was obtained.

11. A person interested in sharing child pornography with others in the P2P network need only place those files in his or her "shared" folder(s). The offering member's child pornography files are then available to all users of the P2P network for download regardless of the offering member's physical location.

12. A person interested in obtaining child pornography can open the P2P application

5

on his/her computer and conduct a keyword search for files using a term such as "preteen sex". The searching member's keyword search would return results of files being shared on the P2P network that match the term "preteen sex". The searching member can then select files from the search results and those files can be downloaded directly from the offering members who are sharing those files.

13. The computers that are linked together to form the P2P network are located throughout the world and work via the Internet, which the Eleventh Circuit has determined is a facility of interstate and foreign commerce; therefore, transmissions via the P2P network are transmissions using a facility of interstate and foreign commerce.

14. Even though the P2P network links together computers all over the world and searching members can download files, it is not possible for a searching member or an offering member to send or upload a file to another user of the P2P network. The software is designed only to allow files to be downloaded that have been personally selected by the searching member. One member does not have the ability to send files from his or her computer to another user's computer without their permission or knowledge. Therefore, it is not possible for one user to send or upload child pornography files to another user's computer without his or her active participation.

## FACTUAL BACKGROUND

15. On January 27, 2012, Special Agent O'Donnell, using an Internet connected computer in an online undercover capacity, signed on to a publicly available P2P file sharing program from the Innocent Images Operations Unit of the FBI, located in Linthicum, Maryland. Special Agent O'Donnell was using a publicly available P2P file sharing program. For purposes of the undercover investigation, the P2P program had been enhanced so that Special Agent

O'Donnell would only search for and download images from one source at a time,[1] would automatically record packet traffic, and would display geographic locations of IP addresses of P2P members who were logged in. Upon signing on to the P2P program, Special Agent O'Donnell observed that the user "Athensdav2" was online. "Athensdav2" was sharing files via his password-protected folder entitled "athensdav2." During the session, Special Agent O'Donnell and "Athensdav2" engaged in an internet chat, and "Athensdav2" provided his password of "niceboy" to allow Special Agent O'Donnell to access the password-protected folder. After entering the password, Special Agent O'Donnell browsed through the shared files in the "athensdav2" folder in thumbnail view, which generates a preview of the image files, and observed numerous child pornography images and videos with titles indicative of child pornography. As a result of the query, Special Agent O'Donnell located an IP address of 96.32.130.126 for user "Athensdav2."

16. At approximately 3:18 p.m. (EST) on January 27, 2012, Special Agent O'Donnell began downloading files offered by "Athensdav2" on IP address 96.32.130.126. Special Agent O'Donnell downloaded 6 image files and 13 video files, which mainly depicted child pornography. Special Agent O'Donnell also captured approximately 27 thumbnail images via the ECHO software program. These thumbnail images also mainly depicted child pornography. The final file was downloaded at approximately 3:32 p.m. (EST). During the downloading of these files, incoming data was captured and logged. Special Agent O'Donnell subsequently reviewed the results of the logs and confirmed that the downloaded files were downloaded from IP address 96.32.130.126. Special Agent O'Donnell utilized screen capture software to save

---

[1] Normally the P2P program allows simultaneous downloads from multiple offering members.

images and listings of the files being offered for download by IP address 96.32.130.126.

17. I have reviewed all of the downloaded files obtained and believe, based on my training and experience, that many contain child pornography as defined in Title 18, United States Code, Section 2256(8)(A), including the following:

(a) 20-10-06- 016 (Image of pre-teen boy with exposed genitals, sitting on male with male's penis in pre-teen's anus)

(b) 20-10-06 019 (Image of pre-teen boy with exposed genitals, sitting on male with pre-teen's legs up in air, male's penis is in pre-teen's anus)

(c) Boylove96633 (Image of three adolescent males with one of the males exposing his genitals)

(d) %252525E22(3) (Image of naked adolescent appearing to receive anal sex from naked adult male)

(e) 15yo cum on 12 yo Back (Video of adolescent male receiving anal sex from another adolescent male)

18. Special Agent O'Donnell used an Internet tool and determined that the IP address 96.32.130.126, was registered to Charter Communications. A United States Department of Justice Administrative Subpoena was served upon Charter Communications requesting the name and other information for the subscriber to whom Charter Communications had assigned IP address 96.32.130.126, during the date and time of the undercover session.

19. Results from the Administrative Subpoena indicated the subscriber to IP address 96.32.130.126, during the time frame given above, was V.S., 210 Deer Parkway, Athens, Georgia, 30305. The account provides Internet service to the address 210 Deer Parkway, Athens, Georgia, 30305. The account was created on March 15, 2011, and the account status was active as of February 6, 2012.

20. An Innocent Images International Task Force Officer (IIITFO) contacted the P2P

network used by "Athensdav2". The IIITFO received account information for "Athensdav2". "Athensdav2" utilized email address chefdav2006@yahoo.com when creating the account on 01/15/2012. "Athensdav2" also listed his date of birth as 09/09/1967.

21. A search of Facebook for the email chefdav2006@yahoo.com was met with one positive result for DAVID PEREZ. Additional Facebook information showed a link to a website "http://chefdav.com." That link led to a website for a Mexican Restaurant in **Athens**, Georgia. The website noted that the general manager was "David Perez (Chef **DaV**)", and provided autobiographical information, including that PEREZ was born in Lake Worth, Florida, and that he had previously worked in Miami. It also provided a photograph of PEREZ. As will be explained below, a Florida driver's license for PEREZ has been obtained and the photograph matches the photograph on the Athens, Georgia restaurant website.

22. A check of public records identified a DAVID PEREZ, born 09/09/1961, as residing at **218** Deer Parkway, Athens, Georgia 30305, a few doors down from V.S.

23. A review of the P2P network's logs for "Athensdav2" account revealed that a different IP address, 76.109.74.254, was used to access the account approximately one week later, on 02/04/2012. A geolocation search of this IP address showed that it originated in Delray Beach, Florida.

24. A few months later, on May 1, 2012, Special Agent O'Donnell, using an Internet connected computer in an online undercover capacity, signed on to the same publicly available P2P file sharing program from the Innocent Images Operations Unit of the FBI, located in Linthicum, Maryland. Upon signing on to the P2P program, Special Agent O'Donnell connected to user "Athensdav2" and observed that this user was initially not sharing any folders. During the session, "Athensdav2" added a folder entitled "athensdav2", which contained 100 files

consisting of approximately 892.1 megabytes. The folder was not password-protected. Special Agent O'Donnell browsed through the shared files in thumbnail view, which generated a preview of any image files, and observed numerous images and videos with titles indicative of child pornography. As a result of the query, Special Agent O'Donnell located an IP address of 76.109.74.254 for user "Athensdav2."

25. At approximately 9:57 a.m. (EDT) on May 1, 2012, Special Agent O'Donnell began downloading files offered by "Athensdav2" on IP address 76.109.74.254. Special Agent O'Donnell downloaded 8 image files and 11 video files, which mainly depicted child pornography. Special Agent O'Donnell also captured approximately 28 thumbnail images via the ECHO software program. These thumbnail images also mainly depicted child pornography. The final file was downloaded at approximately 10:18 a.m. (EDT). During the downloading of these files, incoming data was captured and logged. Special Agent O'Donnell subsequently reviewed the results of the captioned logs and confirmed that the downloaded files were downloaded from IP address 76.109.74.254. Special Agent O'Donnell utilized screen capture software to save images and listings of the files being offered for download by IP address 76.109.74.254.

26. I reviewed all the downloaded files obtained and I believe, based on my training and experience, that many contain child pornography as defined in Title 18, United States Code, Section 2256(8)(A), including the following:

    (a)    20-10-06- 016 (Image of pre-teen boy with exposed genitals, sitting on male with male's penis in pre-teen's anus);
    (b)    20-10-06 019 (Image of pre-teen boy with exposed genitals, sitting on male with pre-teen's legs up in air, male's penis is in pre-teen's anus);
    (c)    Boylove96633 (Image of three adolescent males with one of the males exposing his genitals);
    (d)    %252525E22(3) (Image of naked adolescent male appearing to receive

anal sex from naked adult male);[2] and

 (e) Aaron36 (Image of pre-teen male receiving oral sex from another pre-teen male).

27. Special Agent O'Donnell used an Internet tool and determined that the IP address 76.109.74.254 is registered to Comcast Cable Communications. A United States Department of Justice Administrative Subpoena was served upon Comcast Cable Communications requesting the name and other information for the subscriber to whom Comcast Cable Communications had assigned IP address 76.109.74.254, on May 1, 2012, between 9:57 a.m. (EDT) and 10:18 a.m. (EDT).

28. The results of the Administrative Subpoena indicated the subscriber to IP address 76.109.74.254, during the time frame given above was K.P.T., 7774 Stirling Bridge, Delray Beach, Florida, 33446. The account provides High Speed Internet Service to the address 7774 Stirling Bridge, Delray Beach, Florida, 33446. The account was created on December 9, 2008, and was active as of May 4, 2012. Comcast offers its High Speed Internet Service through the cable jacks located within the subscriber's residence. A subscriber must obtain a cable modem, through which the internet signal passes, even if the subscriber is using a laptop computer or tablet, such as an iPad with an internal wireless modem.

29. Searches of various records and indices for information regarding K.P.T. and address 7774 Stirling Bridge Boulevard South, Delray Beach, Florida revealed the following:

 (a) Public records accessed through a public records database that can be accessed and searched over the Internet for K.P.T. shows a social security account number of xxx-xx-3951, date of birth xx/xx/1955, and an active address 7774 Stirling

---

[2] Special Agent O'Donnell downloaded some of the same images that he downloaded during the session on January 27, 2012 to confirm that he was dealing with the same "Athensdav2."

11

Bridge Boulevard South, Delray Beach, Florida, 33446. The first five digits of the social security account number and the month and day of the date of birth have been redacted for the purposes of this affidavit.

(b) Florida's Driver and Vehicle Information Database (D.A.V.I.D.) records indicate that K.P.T. has a valid driver's license bearing address 7774 Stirling Bridge Boulevard South, Delray Beach, Florida, 33446, social security account number xxx-xx-3951, and date of birth xx/xx/1955. K.P.T. has two vehicles registered to 7774 Stirling Bridge Boulevard South, Delray Beach, Florida, 33446. The first is a 2008, gold Toyota four door automobile bearing Florida tag G089SC. The second is a 2003, aluminum/silver Volkswagen four door automobile bearing Florida tag 384PLH.

(c) Online queries on the Palm Beach County Property Appraiser's Public Access System for property address 7774 Stirling Bridge Boulevard South, Delray Beach, Florida 33446, shows the owner of the property as K.P.T. The records show he has owned said property since November 2008.

(d) Public records accessed through a public records database that can be accessed and searched over the Internet for DAVID PEREZ shows a full name of DAVID A. PEREZ, and a social security account number xxx-xx-7428, date of birth 09/09/1961, and an active address 7774 Stirling Bridge Boulevard South, Delray Beach, Florida 33446. The first five digits of the social security account number have been redacted for the purposes of this affidavit.

(e) Florida's Driver and Vehicle Information Database (D.A.V.I.D.) records indicate that DAVID PEREZ has a valid driver's license, reflecting an address of 7774 Stirling Bridge Boulevard South, Delray Beach, Florida 33446. The Florida Driver's

License was issued on March 15, 2012. The Facebook account for "Chef DaV" showed recent information for a Mexican restaurant in Lake Worth, Florida.

30. On Friday, June 1, 2012, I conducted a physical surveillance of 7774 Stirling Bridge Boulevard South, Delray Beach, Florida. K.P.T. was observed driving his gold 2008 Toyota automobile bearing Florida tag G089SC, to his residence. Hours later DAVID PEREZ was observed driving K.P.T.'s silver 2003 Volkswagen automobile bearing Florida tag 384PLH to K.P.T.'s residence.

31. On Tuesday, June 5, 2012, at approximately 8:35 a.m., DAVID PEREZ was observed exiting K.P.T.'s residence. PEREZ opened and removed an item from the trunk of the Volkswagen. He then re-entered the residence.

32. On June 7, 2012, I applied for a federal search warrant for the premises located at 7774 Stirling Bridge Road, Delray Beach, Florida. The search warrant was executed on June 11, 2012. DAVID PEREZ and K.P.T. were present in the residence at the time the warrant was executed. Both PEREZ and K.P.T. were not detained, but were asked to consent to interviews, and both agreed to do so. PEREZ was interviewed in an extra bedroom where PEREZ had stored some of his belongings. PEREZ informed agents that he had moved to Florida from Athens, Georgia after he had met K.P.T. through an on-line service named "Adam for Adam" in January or February 2012. While in Georgia, PEREZ admitted that he had lived at 218 Deer Parkway, Athens, Georgia. PEREZ admitted that he had been friends with V.S., who lived at 210 Deer Parkway, and that V.S. had given PEREZ the password to V.S.'s wireless internet access, and had also allowed PEREZ to use V.S.'s computer on occasion.

33. PEREZ admitted having an account on the P2P network that Special Agent O'Donnell used to download the images described in this Affidavit, and PEREZ further admitted

13

that his username was "Athensdav2." PEREZ admitted using V.S.'s wireless internet access to download and share images and files over the P2P network while in Georgia. PEREZ further admitted that his email address is chefdav2006@yahoo.com, and identified a black Dell laptop computer that he had brought with him from Georgia as the computer that he used to access the P2P service while in Georgia.

34. PEREZ was asked about his internet access and file-sharing when he arrived in Florida. PEREZ admitted that he used the same Dell laptop computer to access the P2P service since he has been in Florida, and stated that he has used K.P.T.'s internet access through Xfinity (Comcast). PEREZ admitted that he visits the P2P service approximately once a week, and that he had last visited approximately 2 days ago. PEREZ admitted that he had child pornography on his computer and estimated that he had 3 or 4 child pornography files on his computer and another 15 to 30 child pornography files in his P2P folder. PEREZ stated that he did not have a preference for any certain type of child pornography but he searches for boys 14 years old and older and usually used the search term "dad and son."

35. PEREZ was shown the images and still shots from the videos that had been downloaded by Special Agent O'Donnell that are described in this Affidavit and PEREZ admitted that they were images that he had made available over the P2P service.

36. A member of the FBI's computer forensic team performed a secure "Image Scan" of PEREZ's computer and detected approximately 100 images of child pornography on the Dell laptop computer that PEREZ indicated he used to store and share child pornography.

## CONCLUSION

37. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that

14

(a) on or about May 1, 2012, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant, DAVID PEREZ, knowingly distributed, using a facility of interstate commerce, a visual depiction of a minor engaged in sexually explicit conduct, in violation of Title 18, United States Code, Section 2252(a)(2);

(b) on or about May 1, 2012, in Palm Beach County, in the Southern District of Florida, and elsewhere, the defendant, DAVID PEREZ, knowingly distributed and attempted to aid and abet the receipt of an item or items of child pornography that had been transported using a facility of interstate commerce, in violation of Title 18, United States Code, Section 2252A(a)(2)(A); and

(c) on or about June 11, 2012, in Palm Beach County, in the Southern District of Florida, the defendant, DAVID PEREZ, knowingly possessed matter which contained visual depictions of minors engaged in sexually explicit conduct that had been transported using any means or facility of interstate commerce, in violation of Title 18, United States Code, Section 2252(a)(4)(B).

FURTHER AFFIANT SAYETH NOT.

_____
Scott Wilson
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
this ___ day of June, 2012

_____
DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No. 12-8231-DLB

UNITED STATES OF AMERICA

vs.

David Perez,
a/k/a "Athensdav2,"
a/k/a "chevdav2006@yahoo.com,"
a/k/a "Chef DaV,"

        Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?  _____ Yes __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?  _____ Yes __X__ No

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

BY: _____
A. MARIE VILLAFAÑA
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0018255
500 S. Australian Avenue, Suite 400
West Palm Beach, FL 33401-6235
Tel: (561) 820-8711
Fax: (561) 820-8777
Ann.Marie.C.Villafaña@usdoj.gov